OPINION OF THE COURT
Geoffrey O’Connell, J.
Pursuant to court order a hearing was held on June 26, *495 1990 to determine the voluntariness of the defendant’s consent to a blood test as well as the voluntariness of certain statements attributed to the defendant on police form 79. The following are the court’s findings of fact and conclusions of law.

Findings of Fact

At about 3:40 on the morning of October 28,1989, defendant was involved in an automobile accident on Grand Avenue in Baldwin, Nassau County. Police Officer Frederick Swain responded to the scene and approached the defendant’s vehicle. He told the defendant to relax and not move because there was a piece of glass imbedded in his neck.
When an ambulance arrived, defendant walked to the ambulance which drove him to the Nassau County Medical Center. Defendant testified that he lost consciousness on his way to the hospital. Clearly, however, he was not handcuffed or in any other way restrained.
At the medical center the defendant was taken to the emergency room. Officer Swain who rode with him in the ambulance accompanied him to the emergency room and remained with him. Officer Swain testified that there came a point at which he read the defendant the Nassau County police form 38 warning as to the consequences of his refusal to submit to a blood test and the defendant indicated the he understood. The defendant wrote "consent” on the form and signed it.
Although the defendant denied reading or having read to him the form 38, he acknowledged the authenticity of his signature on the document. The signature reflects that the defendant was under some stress and the defendant testified that he would periodically lose consciousness. Blood was drawn at 4:35 a.m.
After being treated, the defendant was driven to police headquarters in Mineóla for processing. At approximately 8:55 a.m. he was asked a series of questions from police form 79 by the desk sergeant in Officer Swain’s presence. In response to the question, "Have you been drinking any alcohol beverages?”, the defendant said, "Yes”. In response to the question, "When, what and how much did you drink?”, he said, ”8 rum and cokes”. The defendant signed at the bottom of the form indicating he had read the answers and they were accurate.

*496
Conclusions of Law

The defendant contends that his consent to a blood test was not voluntary and that the results of the test should be suppressed. His argument rests on the false assumption that he had a right to refuse (see, Gerstenzang, Handling the DWI Case in New York §23.7 [1987]). Vehicle and Traffic Law § 1194 (2) (a) provides that a person who operates a motor vehicle in this State is deemed to have consented to a chemical test of his blood, breath, urine or saliva. In Schmerber v California (384 US 757, 761), the United States Supreme Court held that the drawing of blood and the admission of test results in evidence at trial do not involve the privilege against self-incrimination because such evidence is neither testimonial nor communicative. The New York Court of Appeals has applied Schmerber v California (supra), holding that a defendant has no constitutional right to refuse to submit to a proper request for blood, breath, urine or saliva except as granted by statute (People v Shaw, 72 NY2d 1032, 1033; Vehicle and Traffic Law § 1194 [2]). Instructively, the argument that evidence of a refusal should be suppressed where the refusal was not knowing and intelligent has been rejected by the Appellate Division, Second Department, on the grounds that, “This interpretation would lead to the absurd result that the greater the degree of intoxication of an automobile driver, the less the degree of his accountability.” (Matter of Carey v Melton, 64 AD2d 983.) This rationale applies equally to a consent.
The court notes that there was no issue raised at the hearing as to Officer Swain’s probable cause to arrest the defendant for driving while intoxicated.
With respect to the statements on the form 79, the defendant was clearly in custody and, as the People concede, the statements cannot be used affirmatively at trial. However, defendant seeks to preclude their use for impeachment, arguing that they were involuntary.
In Harris v New York (401 US 222), the United States Supreme Court held statements suppressible for Miranda violations could nevertheless be used for impeachment purposes should a defendant testify. However, for statements to be so used, they must be voluntary (People v Maerling, 64 NY2d 134, 140). While no Miranda warnings were given in this case, there is no evidence that the statements to the desk sergeant were other than voluntary.
*497 Recently, my colleague, Judge Dolan, has held that all form 79 statements should be inadmissible for all purposes. He reasoned that permitting use of form 79 statements would provide a disincentive to honest responses concealing potential risks of incarceration and exposing the county to liability (People v Raissert, Nassau County Ct, July 10,1990, Dolan, J.). This rule and its rationale look like a privilege and sound like a privilege, but it is not one of the privileges recognized under New York law (CPLR 4501 et seq.; Fisch, New York Evidence § 511 et seq. [2d ed]; see, Pickard & Anderson v Young Men’s Christian Assn., 119 AD2d 976). Accordingly, the court finds that there is no blanket rule suppressing form 79 statements.
The motions to suppress are in all respects denied.